# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| CHARLES D. DEASON, JR., | |
| Petitioner, | Case No. 1:13-cv-00127-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN[1], Acting Commissioner of Social Security Administration, | |
| Respondent. | |

Before the Court is Petitioner Charles Deason's Petition for Review (Dkt. 1) of the

Respondent's denial of social security benefits, filed March 18, 2013. The Court has

reviewed the Petition for Review and the Answer, the parties' memoranda, and the

administrative record (AR), and for the reasons that follow, will affirm the decision of the

Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Title II disability insurance benefits on April 27,

2009, alleging disability due to various mental and physical impairments—including

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

**MEMORANDUM DECISION AND ORDER - 1**

depression, bipolar disorder, anxiety disorder, post-traumatic stress disorder, degenerative disc disease of the lumbar spine, obesity, early demyelinating polyneuropathy, and chronic pain. Petitioner claimed a period of disability beginning on December 15, 2006, and ending on the date last insured, March 31, 2010. The application was denied initially and on reconsideration, and a hearing was held on June 23, 2011, before Administrative Law Judge (ALJ) John Molleur. After hearing testimony from Petitioner, a vocational expert, and Petitioner's wife, Leslie Deason, ALJ Molleur issued a decision on July 21, 2011, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on January 28, 2013.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 39 years of age. He attended school through the twelfth grade. His prior work experience includes oil pipeline operator, ice rink manager, maintenance mechanic, and hotel maintenance worker.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of December 15, 2006. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's bipolar disorder, anxiety

disorder, post-traumatic stress disorder, obesity, degenerative disc disease of the lumbar spine, early demyelinating polyneuropathy, and chronic pain severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically musculoskeletal, neurological, and mental impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ determined Petitioner had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except with a sit/stand option; no climbing of ropes, ladders, or scaffolds; no work at unprotected heights; no exposure to moving machinery; no public contact; and only occasional contact with coworkers and supervisors.

The ALJ found Petitioner was not able to perform his past relevant work as an oil pipeline operator, ice rink manager, maintenance mechanic, or hotel maintenance worker. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. ALJ Molleur found Petitioner not disabled, because he was capable of successfully adjusting to other work despite his mental and physical impairments.

# STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred in determining Petitioner's RFC because the ALJ improperly (1) discredited the testimony of Petitioner and his wife, (2) weighed the medical evidence, and (3) failed to account for the cumulative effects of Petitioner's

mental and physical impairments. First, however, the Court briefly addresses the issue of venue, because the record indicates Petitioner resides outside the District of Idaho. (*See, e.g.*, Dkt. 1 ¶ I.)

1.      **Venue**

The second sentence of Section 405(g) of Title 42 of the United States Code governs venue in appeals from the Commissioner's denial of social security benefits:

> Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

Under this provision, venue does not lie in the District of Idaho unless Petitioner either resides or has his principal place of business in the District. The record indicates that Petitioner resides in Ontario, Oregon, which is outside the District of Idaho.

Even so, venue is "not a qualification upon the power of the court to adjudicate, but [instead] a limitation designed for the convenience of the litigants, and, as such, may be waived by them." *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953). Consistent with this rule, that United States Supreme Court has observed that venue under § 405(g) is "waivable by the parties . . . ." *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975). While the Court may on its own motion dismiss a case for improper venue *before* the issue is waived, *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986), it may not do so if a defendant fails include an improper venue defense in either a Rule 12(b) motion to dismiss or a responsive pleading. *King v. Russell*, 963 F.2d 1301, 1304-05 (9th Cir.

1992). At that point the issue is waived. *See* Fed. R. Civ. P. 12(g)-(h); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.")

Here, the time to contest venue—given Petitioner's residency in Ontario, Oregon—came and went without objection from Respondent. On July 1, 2013, Respondent filed an Answer admitting the jurisdictional allegations in the Petition for Review. (Dkt. 7 ¶ I.) In addition, Respondent's brief on the merits does not mention, much less question, venue. Accordingly, Respondent waived the venue issue, if any, in this case.

**2.      The ALJ Properly Assessed Credibility**

Petitioner contends ALJ Molleur erred in finding not credible Petitioner and his wife's testimony regarding the intensity, persistence, and limiting effects of Petitioner's medically determinable impairments. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If a claimant produces objective medical evidence of an underlying impairment—as Petitioner did here—an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); s*ee also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless

there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59. Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p, *available at* 1996

WL 374186.

**A.     Petitioner**

The ALJ provided several clear and convincing reasons for rejecting Petitioner's

subjective complaints about his symptoms. First, the ALJ emphasized various physicians'

treatment notes describing Petitioner's contradictory statements about his pain. The ALJ

found the notes of Petitioner's treating pain physician, Richard Dubose, particularly

probative in this regard. ALJ Molleur cited Dr. Dubose's observation that Petitioner

"presents [a] very unusual picture" insofar as "he complains of intractable low back pain,

[but is] on very little medication [and] does not appear to be in extremis." (AR at 492.)

Further, Dr. Dubose's notes from April 5, 2010, indicate that Petitioner claimed

"increased activity" made his pain worse while "movement" made it better. (AR at 485.)

The April 5 notes also mention that Petitioner reported worse pain but was not using

medication to control the pain. While an ALJ may not reject a Petitioner's subjective

complaints simply because they are not substantiated by the objective medical evidence,

the ALJ may rely "on conflicts between [Petitioner's] testimony and his own conduct."

*Light*, 119 F.3d at 792. These inconsistencies in Petitioner's reports to Dr. Dubose

provide a clear and convincing reason for discrediting Petitioner's subjective complaints.

Additionally, the ALJ provided other specific, clear and convincing reasons for

not fully crediting Petitioner. For example, Petitioner reported that he was required to

apply for Social Security benefits by his private disability insurer. The ALJ reasonably

concluded this requirement lessened the persuasiveness of Petitioner's testimony

**MEMORANDUM DECISION AND ORDER - 9**

concerning the limiting effects of his symptoms. Similarly, the ALJ reasonably found that medical records indicating Petitioner performed some exercise, (*e.g.*, AR at 362, 379-81), undercut his claim that he "does nothing all day" due to depression and anxiety. (AR at 40.) And, as the ALJ noted, the fact that Petitioner reported depression of 10 years duration but successfully worked full time during that period is another clear and convincing reason for discrediting Petitioner. Because the substantial evidence supports ALJ Molleur's reasons for disbelieving Petitioner's subjective complaints, the Court cannot second-guess his credibility determination.

### B.     Petitioner's Wife

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Id.* at 511-12. In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, 679 F.Supp.2d 1249, 1264 (W.D. Wash. 2010) (quoting *id.* at 512).

Mrs. Deason's testimony echoed Petitioner's own testimony concerning the severity and limiting effects of his impairments. Although ALJ Molleur discussed Mrs. Deason's testimony, he determined her report about Petitioner's decreased functionality was entitled to little weight. As with Petitioner, the ALJ noted that Mrs. Deason's account conflicted with the medical evidence of record. Substantial evidence supports this finding. And, even if the ALJ failed to explain why he discredited Petitioner's wife (which he did not), such failure would constitute harmless error in the circumstances of this case, because Mrs. Deason "did not describe any limitations beyond those [Petitioner] himself described." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). In such circumstances, "the ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)) (alterations in original). Thus, the Court finds no error in the ALJ's decision to not fully credit Mrs. Deason's testimony when assessing Petitioner's RFC.

**3.      The ALJ Properly Weighed the Medical Evidence**

Petitioner also challenges the ALJ's approach to the medical evidence of record, primarily arguing the ALJ gave insufficient weight to the opinions of Dr. Si Steinberg and psychiatric and mental health nurse practitioner Patricia Barfield. Dr. Steinberg treated Petitioner once on May 16, 2011—more than one year after Petitioner's date last insured—at which point Dr. Steinberg prescribed medication to treat Petitioner's anxiety,

assigned Petitioner a global assessment of functioning (GAF) score of 50[2], but noted that

Petitioner's symptoms appeared improved. (AR at 548-49.) Barfield was Petitioner's

primary psychiatric clinician from November 2008 through the time of the hearing in late

June of 2011. During this time, she treated Petitioner for bipolar depression and

generalized anxiety, primarily through medications. In November of 2008 and again in

June of 2011, Barfield assigned Petitioner a GAF score of 50. Her treatment notes from

2008 through 2011 indicate some improvement in Petitioner's psychiatric symptoms but

also sensitivity to therapeutic medication doses and compounding physical conditions,

most notably Petitioner's chronic pain.

Barfield completed two Psychiatric Review Technique forms—one dated January

5, 2010, and one dated June 17, 2011. (AR at 440, 534.) Dr. Steinberg cosigned the 2011

form. In both forms, Barfield opined that Petitioner suffered from affective and anxiety-

related disorders, which resulted in marked functional limitations. Barfield also opined

that Petitioner's affective disorder resulted in repeated, extended episodes of

decompensation. On the 2011 form, Barfield indicated that Petitioner's anxiety resulted

in a complete inability to function independently outside his home. Also on the 2011

form, Barfield noted "a lack of medical clarity in his case" but concluded that Petitioner's

pain and sleep difficulties compound his psychiatric conditions, producing "consistent,

---

[2]        "A GAF score is a rough estimate of an individual's psychological, social, and
occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*,
159 F.3d 1161, 1164 n.2 (9th Cir. 1998) (citations omitted). A GAF score between 41 and 50
indicates serious symptoms or impairment in functioning. American Psychiatric Association,
*Diagnostic and Statistical Manual of Mental Disorders*, Text Revision (DSM-IV-TR) 34 (4th ed.
2000). A GAF score between 51 and 60 indicates moderate symptoms. *Id.*

treatment resistant, and disabling" symptoms. (AR at 546.)

ALJ Molleur found Barfield's assessments were entitled to less weight than those of physicians who treated, examined, or reviewed Petitioner's records. Specifically, the ALJ found Barfield's GAF scores and opinions concerning Petitioner's marked functional limitations inconsistent with her own treatment notes and the record as a whole. In addition, ALJ Molleur determined Barfield was not an "acceptable medical source" as defined in 20 C.F.R. § 404.1513(a). Petitioner argues these findings are erroneous.

### A.      Acceptable Medical Source

Petitioner contends the ALJ should have considered nurse practitioner Barfield a treating medical source, because she was Petitioner's "primary psychiatric clinician until the time of the hearing." (Petr.'s Br. at 18, Dkt. 12.) Under the Social Security Administration's regulations, only "acceptable medical sources"—such as, licensed physicians and certain other qualified specialists—can provide evidence establishing a medically determinable impairment. 20 C.F.R. § 404.1513(a). Nurse practitioners are not recognized as acceptable medical sources. *Id.* § 404.1513(d). Rather, a nurse practitioner is an "other source," whose opinion may be used to determine the severity of a claimant's impairments and how the impairments affect the claimant's work. *Id.* Other sources may be discredited in the same manner as lay witnesses. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Petitioner argues that Barfield's opinions concerning the severity of Petitioner's

impairments and the resultant functional limitations should have received controlling weight. He cites Social Security Ruling 06-03p for the proposition that "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source"—particularly if the other source treats the claimant more frequently than the acceptable medical sources and provides better evidence and explanation for her opinions. Soc. Sec. Ruling 06-03p, *available at* 2006 WL 2329939, at *5. In addition, Petitioner notes that Dr. Steinberg cosigned the Psychiatric Review Technique form Barfield completed on June 17, 2011, thereby rendering it the opinion of an acceptable medical source. Respondent does not dispute these arguments. Instead, Respondent argues, even if the Court assumes Dr. Steinberg adopted all of Barfield's opinions, her opinions were properly rejected because they conflict with other medical evidence of record.

The United States Court of Appeals for the Ninth Circuit has held that a nurse practitioner's opinion may in certain circumstances be considered the opinion of a supervising, treating physician. *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996), *superseded in part by regulation as stated in Molina*, 674 F.3d at 1111 n.3.[3] In *Gomez*, the record indicated that a nurse practitioner repeatedly "consulted with", and was closely

---

[3]       As discussed in *Molina*, the holding in *Gomez* "relied in part on language in 20 C.F.R. § 416.913(a)(6)," which has since been repealed. 674 F.3d at 1111 n.3. While "*Gomez*'s continuing vitality" may now be an open question, *id.*, the Ninth Circuit has relatively recently applied *Gomez* to find that a nurse practitioner "working closely with, and under the supervision of," a treating physician constitutes an "acceptable medical source." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).

supervised by, the claimant's treating physician, Dr. Kincade. *Id*. at 971. That record was

sufficient for the Ninth Circuit to conclude that the nurse practitioner acted as Dr.

Kincade's agent throughout her relationship with the claimant. *Id*. Because of this agency

relationship, the court found the nurse practitioner's "opinion was properly considered as

part of the opinion of Dr. Kincade, an acceptable medical source." *Id.*

Here, by contrast, the record contains little indication of the relationship between

nurse practitioner Barfield and Dr. Steinberg. It is clear that Barfield was Petitioner's

primary mental health clinician, and it is also clear that Dr. Steinberg personally

examined Petitioner only once, during a May 16, 2011 medication management visit. Dr.

Steinberg's notes from this examination do not mention Barfield. In fact, the only

evidence of a supervisory relationship between Dr. Steinberg and Barfield is Dr.

Steinberg's signature on the June 17, 2011 Psychiatric Review Technique form. Barfield

completed the form and attached a summary of her clinical findings, but Dr. Steinberg

did not include any of his notes or observations. Thus, there is insufficient evidence of a

close supervisory or agency relationship to attribute all of Barfield's clinical findings to

Dr. Steinberg. However, by cosigning the June 17, 2011 Psychiatric Review Technique

form, Dr. Steinberg effectively adopted the findings Barfield entered on the form.

Even if ALJ Molleur erred in determining that Barfield was not an acceptable

medical source, his decision need not be reversed if this finding amounts to harmless

error. In the Ninth Circuit, an ALJ's error is harmless if it was "inconsequential to the

ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

Cir. 2008) (internal quotation omitted). In this case, the harmless error analysis turns on whether the ALJ properly weighed Barfield's opinions against other medical evidence of record.

### B.    Conflicting Medical Evidence

This brings the Court to the central issue in this case: Whether the ALJ gave sufficient reasons for rejecting Barfield and Dr. Steinberg's opinions regarding the severity and limiting effects of Petitioner's mental impairments. Their findings on the June 17, 2011 Psychiatric Review Technique form indicate Petitioner met the criteria for disability due to affective and anxiety-related disorders (Listings 12.04 and 12.06, respectively). If given controlling weight, these findings could support the conclusion that Petitioner was disabled.[4] Although the ALJ considered Barfield's and Dr. Steinberg's findings on the form, as well as their treatment notes, he gave them little weight because other medical evidence (primarily from the alleged onset date through the date last insured) indicated that Petitioner's mental impairments did not meet the listing criteria or produce the marked functional limitations noted by Barfield and Dr. Steinberg.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat

---

[4]     The form indicates Barfield and Dr. Steinberg's assessment covers the period from November 11, 2008 to June 15, 2011. This period partially overlaps the period for which Petitioner seeks disability benefits—December 15, 2006 through March 31, 2010. The ALJ considered the form and other medical evidence "for purposes of an overall understanding of the record [and] of determining disability from the alleged onset date of December 15, 2006 to March 31, 2010, the date last insured." (AR 38.)

**MEMORANDUM DECISION AND ORDER - 16**

the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir.

1995). Generally, more weight is accorded to the opinion of a treating physician than to

nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the

treating physician's opinion is not contradicted by another doctor, it may be rejected only

for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

Cir.1991). But, if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may properly reject the treating physician's opinion by providing "specific

and legitimate reasons" supported by substantial evidence in the record for so doing.

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

For instance, an ALJ may reject a treating physician's opinion if it is based "to a

large extent" on a claimant's self -reports that have been property discounted as not

credible. *Tommasetti*, 533 F.3d at 1041. Additionally, an ALJ is not bound to a

physician's opinion of a claimant's physical condition or the ultimate issue of disability.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does

not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r

of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may

not support the physician's opinion include clinical findings from examinations,

conflicting medical opinions, conflicting physician's treatment notes, and the claimant's

daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v.

Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595 (9th Cir. 1999).

Respondent argues the ALJ properly rejected nurse practitioner Barfield's and Dr. Steinberg's opinions because they conflict with the opinions of other physicians. ALJ Molleur's decision provides an extensive and thorough discussion of the medical evidence, specifically noting that "significant weight" was given to a psychological consultative examination performed by Dr. David Starr on June 26, 2006—six months before Petitioner's alleged disability onset date and more than two years before he was first treated by Barfield. (AR at 32.) According to Dr. Starr, Petitioner reported back and shoulder pain, ongoing depression, infrequent panic attacks, occasional nightmares, vague suicidal ideation, obsessive thinking, and a general lack of motivation. These symptoms are consistent with the symptoms Petitioner reported to Barfield and other medical providers. Starr diagnosed Petitioner with dysthymic disorder and anxiety disorder and assessed a GAF score of 60, indicating "moderate symptoms of impairment in social functioning related to depressed mood and anxiety." (AR at 284.) Although Dr. Starr's findings predate Petitioner's alleged onset date, the ALJ accounted for this fact by basing Petitioner's RFC on more recent findings concerning the severity of Petitioner's anxiety and his difficulty being around others.

Licensed clinical social worker Jay Whitcomb met with Petitioner for monthly therapy sessions from November of 2008 through early February of 2010. Whitcomb first treated Petitioner on November 10, 2008, at which point he diagnosed major depression and social phobia and assigned a GAF score of 55 (indicative of moderate symptoms). (AR at 324.) By October 2009, Whitcomb determined that Petitioner's GAF score had

risen to 57. Petitioner's score remained at 57 when Whitcomb examined him in February of 2010. During this time period, Barfield consistently assigned Petitioner a GAF score of 50 (the upper limit of the range indicating serious symptoms). After noting that neither Whitcomb nor Barfield are acceptable medical sources, the ALJ specifically compared their scores and determined that Whitcomb's assessments were more consistent with the record as a whole.

The ALJ also gave "some weight" to a November 6, 2009 Psychiatric Review Technique form prepared by reviewing psychologist Sandra Lunblad. (AR at 34.) Dr. Lundblad opined that the objective medical evidence concerning Petitioner's affective and anxiety disorders—including Barfield's treatment notes and Dr. Starr's examination findings—did not reveal significant mental function limitations. She concluded that Petitioner was not as functionally impaired as he alleged and that his symptoms were improving with medication. (AR at 433.)

In a February 23, 2010 review of Petitioner's mental health records, state agency psychological consultant Dr. Paul Rethinger also noted some improvement in Petitioner's symptoms between late 2008 and the summer of 2009. Although Rethinger opined that Petitioner continued to have "motivation issues" and should only have occasional contact with the general public, he also opined that the medical evidence indicated Petitioner was "cognitively intact" and able to perform simple tasks. (AR at 472.)

Additionally, the ALJ found that Petitioner's presentation during a March 4, 2010 consultation with pain physician Richard Dubose was inconsistent with Barfield's

treatment notes from a week earlier. For example, while Barfield's mental status examination found Petitioner's mood "dysthymic at best" and his affect "notably obtundent and restricted in range," (AR at 513), Dr. Dubose reported Petitioner's mood and affect were within normal limits. These inconsistent presentations gave the ALJ a specific, legitimate basis for giving Barfield's assessments less weight.

Despite these and other findings suggestive of nondisabling impairments, Petitioner argues the medical evidence of record does not provide specific, legitimate reasons for rejecting the marked limitations found by Barfield and Dr. Steinberg. The Court disagrees. The ALJ's discussion of the medical evidence is extensive, detailed, and supportive of the finding that Petitioner could perform light work with a sit/stand option, a few postural limitations, no public contact, and only occasional contact with coworkers and supervisors. Although Barfield (and Dr. Steinberg as cosigner) found Petitioner's mental impairments caused marked limitations and repeated episodes of decompensation that would preclude such work, the ALJ reasonably found their treatment notes indicated moderate, improving symptoms. Further, the ALJ found no record of repeated decompensation episodes in Petitioner's voluminous medical records, and Petitioner identifies nothing in the record that would substantiate Barfield's opinion on this criterion. Contrary to Barfield statement that Petitioner's psychiatric symptoms were consistent and treatment resistant, both her notes and Dr. Steinberg's notes indicate that Petitioner's symptoms improved, albeit modestly, with medication. The ALJ identified these internal inconsistences, as well with the contradictory medical evidence described

above. In doing so, he gave specific, legitimate reasons for rejecting Barfield's and Dr. Steinberg's opinions.

Accordingly, the Court finds that any error in concluding Barfield was not an acceptable medical source was harmless. The ALJ specifically acknowledged that Barfield was Petitioner's primary psychiatric clinician and thoroughly discussed her findings in light of the entire record. Thus, the ALJ demonstrated that he evaluated and rejected Barfield's opinions on their merits, not simply because he deemed her an "other source." Because the ALJ provided specific, legitimate reasons for rejecting Barfield's opinions, any error in classifying her was "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (internal quotations omitted).

**4.    The ALJ Properly Accounted for the Cumulative Effects of Petitioner's Mental and Physical Impairments in Determining Petitioner's RFC**

Last, Petitioner contends the ALJ's RFC failed to account for the cumulative effect of his physical impairments—neuropathy and chronic pain—and his mental impairments—bipolar and anxiety disorders. A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ should consider all relevant evidence in the record, medical or otherwise, when making this determination. *Id.* Further, an ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Hence, an ALJ's RFC determination hinges not only on his assessment of the medical evidence but also his

assessment of lay witness testimony regarding the limiting effects of the claimant's medically determinable impairments.

ALJ Molleur's thorough explanation of his RFC determination leaves no doubt that he properly accounted for all of Petitioner's impairments. The ALJ specifically addressed Petitioner's anxiety and difficulty being around others by including "no public contact and only occasional contact with co-workers and supervisors" as limitations in the RFC and his hypothetical question to the vocational expert. (AR at 32, 83.) The ALJ also noted that any mental-health-related limitations in concentration, persistence, and pace could be accommodated in the representative jobs provided by the vocational expert, all of which reflected relatively low vocational preparation levels. And, with respect to Petitioner's pain and neuropathy, the ALJ found Petitioner's RFC calls for light exertion and the option to sit or stand while at work, which is consistent with clinical findings indicating that prolonged sitting or standing makes Petitioner's physical symptoms worse.

Petitioner does not identify any other limitations that should have been incorporated into the RFC determination. Rather, he argues the RFC should have accounted for more severe functional limitations. That argument repeats Petitioner's arguments about the lay witness testimony and medical evidence, which the Court has already found unpersuasive. Thus, the Court finds the ALJ's RFC determination adequately accounted for the combined effects of Petitioner's medically determinable impairments. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008)

("In arguing the ALJ's hypothetical was incomplete, Stubbs–Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.")

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: September 29, 2014

Honorable Candy W. Dale
United States Magistrate Judge